# HENRY HOWARD, RALPH WADHAMS, AND WILLIAM S. DEZING *versus* THOMAS SCOTT

January 16, 1832

William A. Fletcher, solicitor and of counsel for complainants.
Alexander D. Fraser, solicitor for defendant.

## [OPINION]

The Def[t] has Demurred to the Pltff Bill, on the grounds, that the Bill does not make out a case, sufficient to entitle them either to a discovery or relief against the Defendant.

The Bill was probably intended to be a Cross Bill, and intended Draw out a Discovery from Scott of facts to be used against him on the hearing in equity in the Case of Scott against Smart, Miller and Wadams, instituted and now pending in this Court— But is evident it cannot be placed in that Class of Bills, as the parties are not the same in the Two actions—

If supported at all it must be as an original Bill, unconnected with the proceedings on the Bill of Scott against Smart, Miller & Wadams— and as such I shall consider it—

The present proceedings are grounded upon certain articles of agreement of copartnership made and entered into by and betwen Robert Smart, Oliver W. Miller and Thomas Scott the Def[t] set out in the Pltffs Bill and dated the 6 day of Oct[r] 1824— In and by which the said Smart, Miller and Scott covenant and agree, with each other, at their joint expense, to erect a saw mill on the Black River in the County of St. Clair, upon three quarter sections of Land by them previously purchased from the United States with a view to said Copartnership and by them then held as tenants in common— The said Smart having loaned to Scott his proportion of the money to pay for such land, on Scotts personal security—

The Copartnership by their agreement was to exist Two years, and during which Term neither was at liberty to part with his interest in the copartnership— and after the Term of Two years neither of the partners was to sell until he had made an offer to the other partners, nor in any event could any member of the copartnership sell his interest in the Lands, premises and improvements of the Copartnership to a stranger so as to make him a Copartner without the consent of the other Two—

It further appears that by the Copartnership agreement That Scott, who professed himself a millwright should enter into the service and employment of the Company as a millwright for one year at a salary of 400 hundred dollars, subject to a penal clause inserted in the articles, that if he was absent from the work at any time, more than three weeks he should forfeit & pay the company Two dollars per day—

Under the above agreement, Scott entered into and upon the business of the Company and commenced erecting a Dam & mills by cutting Timber &[c] But before much progress had been made in the work, it was discovered that the mill seat was not upon the Three quarter Section purchased but on the river below and that Robert Forsyth was the legal proprietor of the land on which the mill seat was located— Upon this discovery the Company found it necessary in order to carry on the business under the Copartnership agreement, to purchase from Forsyth— That the purchase was accordingly made for the Company, but the title Deeds made to Miller and Smart, who advanced the purchase money— The mill site being secured the Business of the Company progressed, and the Dam & Build-

ings placed on the Lands acquired from Forsyth— That during the summer and at the time Scott was at the work, sundry other Tracts of Land were purchased from the U. S. lying on the River above the mills & with a view to securing a sufficiency of Logs for the mills— These last lands were purchased in the names of Smart, Miller & Wadams altho it is alledged that Smart and Miller advanced the money to pay for the same—

The Business of the copartnership was prosecuted under the superintendance of Scott, and under the articles of copartnership, and for the joint account of Miller, Smart and Scott & for their joint profit or loss, until the Last of Nov$^r$ or first of Dec$^r$ 1825, when Miller became dissatisfied with the progress of the work & sold to Wadams, his interest and right in and to the lands and the buildings and improvements thereon, with an averment that Miller had after the sale no further interest therein— The sale was made in less than one year after the date of the copartnership yet It is not alledged by the Bill that the sale of Miller to Wadams was by the consent of Smart and Scott— If such assent was given it must be inferred, from the apparent ownership and active agency Waddams manifested in the work afterwards & whilst Scott continued in the management of the Concerns of the Company— The Bill further charges and states that the work after Wadams purchased, was continued as before under the Directions of Scott, and the Dam & mill was nearly completed when, on the 28th day of March 1826, the dam was carried away by the freshet & the mill damaged and that Scott on said 28th of March 1826 quit the mill premises and the companys employment— The Bill charges the damages sustained by the breaking of the dam in the fall of 1825 at $800 and the damages done in March to the dam 2500 hundred doll$^s$ and the mill at $3500, all which damages the Complainants say have been the Consequence of the Carelessness, want of skill or fraudulent practices of Scott, whilst in the employment of the Company as a millwright— and in breach of the covenants he was bound by in the articles of Copartnership—

Admitting that the Company of Miller, Smart, and Scott, have sustained damages to the amount stated, thro' the negligence, want of skill or fraudulent practices of Scott, as a millwright employ$^d$ and entrusted to conduct the Business and admitting that Wadams became a partner by the assent of Smart and Scott, does it follow that Howard and Dezing, who have acquired an interest in the Lands and Mills since the damages and causes which produced them took place, have a right and authority to call on Scott to account to them for those alledged damages? They do not shew that those damages affected their interest or that they are in anywise prejudiced— so far as the titles are set forth in the Bill, Miller conveyed his interest in the lands, mills and improvements, and nothing further— Wadams conveyed the Two third parts of his purchase to H. & Dezzing— Nor does Smart convey to Wadams, Howard and Dezing, more than his interest in the Lands, premises & mills with the improvements— It is not alledged in the Bill that the articles of Copartnership, or any personal claim or demand, that they or either of them had or could inforce against Scott were assigned by Miller & Smart or either of them— What then is the authority or title set up by the Complainants, that will justify a Decree ag$^t$ the Defendant— I do not discover any thing stated in the Bill, which if proved, would justify a Decree in their favor— To justify a Decree, there must exist either a privity in Contract or interest between the Parties— Mitford, Cooper and all other chancery writers state the law to be so, and if the Bill does not shew such privity it may be demurred to for that Cause—

It is not set forth or pretended that there was ever any Contract, between

Scott Howard and Dezing nor with Wadams, unless Scott agreed he should take the place of Miller— Whatever Scotts interest in the Company of Smart, Miller & Scott, was it still exists— He has never conveyed it away and no judgment or Decree of forfeiture has ever been made to bear upon it.

There is a Bill now pending in this Court, in which Scott is Complainant and Smart, Miller & Wadams are defendants, in which the matters attempted to be brought before the Court by this Bill, will be investigated and settled, between the parties to the Contract and in interest . . . . [incomplete].